IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARSENIO COOPER, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 11-cv-04455 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| DR. SYLVIA MAHONE and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Arsenio Cooper alleges that while in the custody of the Illinois Department of Corrections ("IDOC"), he was denied proper medical care by Defendants Sylvia Mahone and Wexford Health Sources, Inc. ("Wexford") in violation of the Eighth Amendment to the U.S. Constitution. Accordingly, Cooper has brought this civil rights action under 42 U.S.C. § 1983 seeking monetary damages and injunctive relief. Now before the Court is Defendants' motion for summary judgment (the "Motion"). (Dkt. No. 82.) Because Cooper cannot show that Defendants acted with deliberate indifference to his serious medical needs, the Motion is granted.

**BACKGROUND**

The facts underlying this action are substantially undisputed.[1] Cooper is a prisoner with IDOC, confined at the Stateville Correctional Center ("Stateville"). (Pl.'s Resp. to Defs.' Stmt. of Material Facts ¶ 1, Dkt. No. 95.) He alleges that he injured his right knee playing basketball there on April 30, 2011. (*Id.* ¶¶ 7, 12.) That same day, he was examined at a Stateville hospital. (*Id.* ¶ 13.) IDOC had contracted with Wexford to provide medical services at Stateville, and Mahone was a physician employed by Wexford as a medical director in the hospital unit where

---

[1] The following factual summary is compiled from Plaintiff's Response to Defendants' Statement of Material Facts. (Dkt. No. 95.) Unless otherwise noted, these facts are undisputed.

Cooper was examined. (*Id.* ¶¶ 2, 3.) One of the medical technicians who saw Cooper on the day of his injury told Cooper that she thought he had fractured his knee, and prescribed a three day lay-in, Tylenol, and ice for his knee. (*Id.* ¶ 14.)

On May 1, 2011, Cooper had a follow-up examination at Stateville, after which Mahone approved his transfer to the emergency room at Provena St. Joseph Hospital in Joliet, Illinois for further examination. (*Id.* ¶¶ 15-17.) Cooper was seen by St. Joseph emergency room physician Daniel Magdziarz later that day. (*Id.* ¶ 18.) Magdziarz observed swelling of Cooper's knee, fluid within the knee joint, and possible internal damage to knee ligaments or cartilage. (*Id.* ¶ 22.) An x-ray of Cooper's knee did not reveal any acute fracture, but Magdziarz could not rule out the possibility of hairline fractures that would have been revealed only by an MRI exam. (*Id.* ¶ 21.)

Cooper was fitted with a knee immobilizer (*i.e.*, a knee brace) at St. Joseph. (*Id.* ¶ 23.) His discharge form instructed him to wear the brace when he was awake, to use crutches to prevent weight-bearing use of the knee, and to take prescribed medications to relieve inflammation and pain. (*Id.* ¶ 25.) He was instructed to seek a referral to an orthopedist and to return to the emergency room if his condition worsened. (Dkt. No. 93 at 7.) Magdziarz also signed a form that represented that Cooper was okay to be readmitted to Stateville. (*Id.* at 9.) The readmission form stated that Cooper should wear the knee brace and use crutches to prevent weight-bearing activity, and specified that Cooper should follow up with an orthopedist within one week. (*Id.*) Cooper was not told how long he would need to wear the brace. (Pl.'s Resp. to Defs.' Stmt. of Material Facts ¶ 26, Dkt. No. 95.) He returned to Stateville on the night of May 1 wearing the brace. (*Id.* ¶ 27.) That evening, Mahone issued a telephone order for Cooper to be provided with a low-galley bunk, Ibuprofen, and crutches. (*Id.* ¶ 28.)

Stateville security officers removed Cooper's brace on May 2, 2011. (*Id.* ¶ 29.) The officers told Mahone that Cooper could not have the knee brace because it contained metal bars. (*Id.* ¶ 30.) Mahone examined Cooper on May 3 and observed minimal swelling in his right knee. (*Id.* ¶ 32.) She prescribed medications for inflammation and pain, authorized a three-day exemption from his normal prison work responsibilities, and instructed him to refrain from sports activity for 30 days. (*Id.* ¶ 33.) Mahone also ordered a metal-free brace for him. (*Id.* ¶ 34.)

On May 5, 2011, Mahone conferred with a colleague and approved an MRI exam for Cooper's knee to check for internal injury. (*Id.* ¶ 35.) She examined him again on May 13 and refilled his prescriptions for two medications. (*Id.* ¶ 36.) Cooper was transferred to the University of Illinois – Chicago Medical Center ("UIC") on June 2 for the MRI. (*Id.* ¶ 37.) That examination indicated that Cooper's patella had been dislocated and relocated, and that there were microfractures in surrounding bones, tears to nearby tissue, and damage to ligaments and cartilage. (*Id.* ¶ 39.) Cooper's knee injury produced fluid and swelling. (*Id.*) Ejaz Shamim, the radiologist who interpreted the MRI results, did not prescribe treatment. (*Id.* ¶ 40.)

Mahone next saw Cooper on June 3, 2011 and observed that he was walking without a cane. (*Id.* ¶ 42.) She renewed his prescriptions for two medications and advised him not to put too much pressure on his knee. (*Id.* ¶¶ 42-43.) She saw him again on June 8 and approved his transfer to UIC for an orthopedic evaluation. (*Id.* ¶ 44.) Cooper was evaluated at UIC on June 10 and was given a home exercise plan consisting of knee stabilization exercises. (*Id.* ¶ 45.) Cooper's prescriptions were refilled on July 20, 2011. (*Id.* ¶ 46.) His knee was x-rayed on July 28, and the findings were negative. (*Id.* ¶ 47.) Cooper still had not received a knee brace, and on September 16, 2011, Mahone requested that Wexford provide one for him. (*Id.* ¶ 50.) Cooper finally received a knee brace in November or December 2011. (*Id.* ¶ 51.)

## DISCUSSION

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The mere existence of a factual dispute is insufficient to overcome a motion for summary judgment; the nonmovant "must present definite, competent evidence in rebuttal." *Parent v. Home Depot U.S.A., Inc.,* 694 F.3d 919, 922 (7th Cir. 2012).

In his complaint, Cooper alleges that the condition of his knee worsened because of Defendants' failure to provide him with a knee brace and that this failure constituted deliberate indifference to his medical needs in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. The Eighth Amendment, through the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals. *Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006). That constitutional provision is violated by state officials who display deliberate indifference to the serious medical needs of prisoners. *Id.*

Under the Eighth Amendment, a prisoner's "medical need is sufficiently serious to require the attention of prison officials if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012); *see also McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010)). The parties in the present action agree that Cooper's knee injury constituted a serious medical need for Eighth Amendment purposes. But they dispute whether Defendants acted with deliberate indifference.

4

To show deliberate indifference, a plaintiff need not establish that he was literally ignored. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). But he must show more than mere negligence. *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008); *see also McGee*, 721 F.3d at 480 ("Deliberate indifference is more than negligence and approaches intentional wrongdoing."). To prevail, a plaintiff must show that the defendant knew of a substantial risk of harm to an inmate and either acted or failed to act in disregard of that risk. *Arnett v. Webster,* 658 F.3d 742, 751 (7th Cir. 2011).

The undisputed facts preclude any conclusion that Cooper was generally denied treatment: Cooper received prompt medical attention from Defendants on the day of the injury, more than one referral to outside specialists, and multiple follow-up examinations and medication prescriptions. So Cooper bases his deliberate indifference claim not on the absence of treatment but rather on the delayed provision of the knee brace. He argues that the instruction by Magdziarz that a brace be used and Mahone's own decision to order a metal-free brace established that such equipment was a necessary component of his treatment, and further that the delay in its procurement constituted deliberate indifference to his serious medical need.

Cooper's argument is countered, however, by the testimony offered by Defendants' expert witness. Defendants have presented the expert opinion of Charles Bush-Joseph, a board certified orthopedic surgeon who is familiar with sports injuries and has treated numerous patellar dislocation injuries. (Pl.'s Resp. to Defs.' Stmt. of Material Facts ¶¶ 71-72, Dkt. No. 95.) Bush-Joseph offered the opinion that Cooper suffered his injuries while playing basketball. (*Id.* ¶ 73.) He also opined that the failure to provide Cooper with a brace would not have caused his knee to worsen and did not affect the ultimate outcome of his injury. (*Id.* ¶¶ 76-77.) Bush-Joseph

further stated that there is no consensus in the orthopedic community about the value of immobilization in treating injuries such as Cooper's. (*Id.* ¶ 74.)

In response to that opinion, Cooper argues that Magdziarz, Mahone, Bush-Joseph, and Arthur Funk, Wexford's regional medical director, all conceded the propriety of using a knee brace for his injury. (*See* Pl.'s Stmt. Additional Materials Facts ¶¶ 21-22, 27-30, 31, 36, Dkt. No. 96.) But the propriety of one treatment method does not create constitutional liability whenever a medical professional departs from that method. "[M]edical professionals are not required to provide 'proper' medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (citation omitted). The course of treatment chosen by a medical professional will therefore be accorded deference unless no minimally competent professional would have so responded under those circumstances. *Id.* at 698; *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific medical treatment.").

None of the medical testimony cited by Cooper in opposition to the Motion asserts that the treatment he received was improper. Moreover, none of the evidence suggests that treatment in the absence of a knee brace created a substantial risk of further injury or that Mahone was aware of any such risk. Nor does any evidence indicate that the treatment Cooper received was such a departure from accepted professional standards that it would permit an inference of deliberate indifference. *King v. Kramer,* 680 F.3d 1013, 1018-19 (7th Cir. 2012) (citing *Estate of Cole by Pardue v. Fromm,* 94 F.3d 254, 261-62 (7th Cir. 1996)). Cooper has thus failed to offer

evidence that would permit a reasonable jury to find in his favor on the deliberate indifference element of his claim.

Cooper has also failed to provide evidence that would permit a jury to find that any harm he suffered was the result of Defendants' delayed provision of his knee brace rather than his original injury. *See Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) ("No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury.") A plaintiff seeking relief under the Eighth Amendment for delayed medical treatment must offer "verifying medical evidence" that the delay, rather than his underlying injury, caused him harm. *Id.* (citing *Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007)).

Cooper offers testimony that the condition of his knee worsened after his brace was removed, but in the absence of any medical evidence demonstrating the causal relationship between the removal of the brace and his injury, such testimony must be categorized as the sort of *post hoc ergo propter hoc* evidence that is routinely rejected as proof of causation. *FTC v. QT, Inc.,* 512 F.3d 858, 862 (7th Cir. 2008); *Musabelliu v. Gonzales,* 442 F.3d 991, 994 (7th Cir. 2006). Without medical evidence that the delay in providing a knee brace caused him harm, Cooper would lack proof of a necessary element of his claim even if he could support a finding that the delay was produced by deliberate indifference.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 82) is granted.

Dated: September 29, 2014

Andrea R. Wood
United States District Judge